**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**ANTHONY SMITH**                                                                         **PLAINTIFF**

**v.**                                                    **Civil Action No.: 3:15-cv-00162-MPM-RP**

**UNION INSURANCE COMPANY**                                               **DEFENDANT**

**ORDER**

Presently before the Court is defendant Union Insurance Company's ("Union") *First*

*Motion for Summary Judgment* [138]. Plaintiff Anthony Smith filed a response in opposition to

the motion, to which Union filed a reply.[1] The Court has reviewed the parties' submissions, in

addition to relevant evidence and authorities, and is now prepared to rule.

**Factual and Procedural Background[2]**

Anthony Smith was employed as a teacher with the Desoto County School District in

Desoto County, Mississippi. On August 10, 2009, Smith attempted to replace a light bulb in his

classroom. However, the light bulb unexpectedly exploded, causing Smith to lose his balance

and fall from a ten-foot ladder. As a result of the fall, Smith sustained serious injuries to his

"head, neck, back, shoulder and other upper extremities." It is undisputed that, at the time the

accident occurred, Union was Desoto County School District's workers' compensation insurance

carrier.

---

[1] Union filed a motion to strike Smith's response, arguing that the response should be stricken
because it was filed after the applicable deadline. The Court denied this motion in a previous
order. Additionally, Smith filed an objection to Union's reply, averring that Union exceeded the
maximum page limit. Candidly, the Court finds these procedural maneuvers and the parties'
disagreeable nature in general to be rather tiresome. It has considered the submissions of each
party in full.
[2] The Court has attempted to summarize the extensive facts giving rise to this action as
concisely as possible. However, it cannot help but note that the parties have made this task
difficult, as many of the underlying facts are unclear in their briefs.

Due to the severity of his injuries, Smith needed extensive medical treatment. In fact, in his brief, he himself admitted that he "required a lot of medical care." He alleges, however, that he failed to receive the medical care he needed in a timely fashion due to Union's unnecessary delay in providing authorization for many requested services, despite his numerous attempts to obtain Union's cooperation.

As a result, Smith filed suit in this Court on September 24, 2015, alleging that Union's bad faith delay in authorizing necessary medical care and failure to promptly and properly conduct investigations into his requests caused him emotional distress. He also avers that Union's conduct was so egregious as to warrant punitive damages. Specifically, he alleges that Union "delayed or constructively denied medical care in defiance of the medical evidence provided to it by the treating physician, and repeatedly left [him] without medical care. The delays, and the refusal to investigate [his] need for medical care is systemic behavior of a willful nature representing a repetitious, and intentional wrong against [him]. . ." He has also described Union's handling of his claim as a "disgrace."

Smith's allegations are essentially based on four specific instances of Union's bad faith delay in providing authorization for necessary medical care. However, prior to providing a description of those specific instances, the Court will set forth a brief explanation of the administrative process for workers' compensation claims to the extent it is relevant to the present action, in order to provide context for Smith's allegations.

Pursuant to the Workers' Compensation Act ("the Act"), the Workers' Compensation Commission ("the Commission") must "establish an appropriate medical provider fee schedule, medical cost containment system and utilization review which incorporates one or more medical review panels to determine the reasonableness of charges and the necessity for the services . . ."

Miss. Code Ann. § 71-3-15(3).  In compliance with this statutory mandate, the Commission has enacted a fee schedule.[3]  The fee schedule defines "utilization review" as the "evaluation of the necessity, appropriateness, and efficiency for the use of heath care services."  It permits the insurance carrier to submit any recommended medical service through utilization review prior to authorization and even requires that certain medical services be submitted through utilization review.  Once a recommended service is submitted to utilization review, an outside entity, organization, or representative conducts an investigation and ultimately makes a determination on behalf of the carrier as to whether the requested service is medically necessary.

In the case at hand, Forté was the name of the company that performed the utilization reviews that Union submitted in this case.

With this brief background in mind, the Court turns to Smith's four specific alleged instances of Union's delay in this cause.  As stated by Smith in his response, the four instances of bad faith delay concern "(1) failure to authorize physical therapy and ESI injection; (2) delay in requests to authorize carpal tunnel surgery; (3) delay in refusing to authorize cubital tunnel surgery; and (4) the refusal to authorize a neurological evaluation, and the follow[-]up requests of that doctor for diagnostic testing."  Perhaps unsurprisingly, the parties dispute many of the underlying facts surrounding each of those four instances.  The Court will set forth the relevant facts as to each of them in turn.

*First Alleged Instance of Delay:*

The first alleged instance of delay occurred between August 10, 2009—the date of the accident—and December 28, 2009.  Smith alleges that sometime during October 2009, "Union began to refuse physical therapy and [epidural steroid injections] recommended by

---

[3]   The parties agree that the 2007 fee schedule is controlling in this case.

Calandruccio." Dr. Calandruccio was Smith's treating physician. As to this refusal, Union states that, at the time this non-authorization occurred, Smith had already completed approximately twenty-five physical therapy sessions, all of which had been approved and paid by Union. However, Forté—again, the company performing the utilization reviews for Union in this matter—determined that the request for additional therapy should be denied because "Smith had previously undergone physical therapy and a nerve block, and that additional physical therapy was not in accordance with applicable guidelines or properly documented by the treating physician."

During this same time period, Smith received an epidural steroid injection. On December 2, 2009, Dr. Dockery—another treating physician—recommended that Smith receive a second injection. This request was sent through utilization review, and Forté ultimately found that the request should not be authorized. On this point, Union states that "[t]he treatment was non-authorized, in part, because the first injection only provided short-term relief, and the physician did not provide documentation to support that an additional injection would provide any long-lasting relief."

At the time these denials occurred, Smith was not represented by counsel. The denials were not appealed. At some point thereafter, Smith obtained counsel—Shane Tompkins. On or about December 28, 2009, Tompkins filed a motion to compel before the Commission on Smith's behalf, requesting an order compelling Union to authorize the additional physical therapy sessions and a second epidural steroid injection. According to the parties, although no other documentation has been submitted on the point, a hearing was held before an administrative law judge as to the motion to compel; however, an order was not entered after the

hearing.  Nevertheless, Union eventually agreed to authorize the second injection and additional physical therapy.

Smith received the second injection on February 3, 2010, and began additional physical therapy on February 15, 2010.  He now argues that the fact that Union ultimately agreed to authorize the additional therapy sessions and the injection tends to show that the initial denial was nothing more than a delay tactic.

*Second Alleged Instance of Delay:*

Second, Smith alleges delay related to the authorization of his carpal tunnel release surgery, which was recommended by Dr. Calandruccio on June 30, 2010.  Smith avers that Union unnecessarily delayed in providing authorization for the surgery.  Contesting this allegation, Union emphasizes that Smith had been diagnosed with pre-existing carpal tunnel syndrome prior to the accident and that there was a reasonable dispute as to whether the requested procedure was related to the accident or Smith's pre-existing condition.  On July 7, 2010, Union submitted the request to utilization review, and Forté issued a notice declining the request two days later.

Thereafter, on July 26, 2010, Tompkins filed another motion to compel on Smith's behalf, requesting "that the Commission compel [Union] to approve and pay for the scalene blocks and carpal tunnel release recommended by his treating physician, Dr. James Calandruccio, pursuant to the Mississippi Workers Compensation Act."[4]  A hearing on the motion was set for August 20, 2010.

Prior to the hearing, Union exercised its statutory right to have Smith evaluated by a physician of its choosing to assess the extent of the injury and the need for medical treatment,

_____

[4]  Union avers that the scalene block was not denied and was actually performed on August 3, 2010.

which is referred to as an employer medical exam ("EME").[5]  Union arranged for Smith to be evaluated by Dr. Feredion Parsioon.  After his first appointment was postponed, Smith was seen and evaluated by Dr. Parsioon on September 16, 2010.  Dr. Parsioon recommended an MRI and an EMG nerve conduction study, presumably in order to aid in his determination as to whether the surgery was medically necessary.  After Union initially declined to provide payment for these tests, arguing that there was a lack of medical evidence supporting the need for them, it eventually agreed to authorize them sometime during November 2010.  Union claims, however, that it was unable to get in touch with Dr. Parsioon's office for several weeks in order to schedule the tests.  Smith filed an additional motion to compel the authorization of the tests in the interim—on December 20, 2010.  At some point during this time period, Union got in touch with Dr. Parsioon's office to schedule the tests.  The MRI exam was performed on December 22, 2010, and the nerve testing was performed on January 4, 2011.  The administrative law judge entered an order granting Smith's motion that Union authorize these tests on January 6, 2011— despite the fact that they had already been performed by this point.

After receiving the test results, Dr. Parsioon agreed that the carpal tunnel release surgery was medically necessary.  He also recommended that Smith undergo surgery for his cervical spine.

Smith alleges that Union was aware of Dr. Parsioon's opinions—and Smith's desire to undergo the procedure— on January 11, 2011; however, Union still had not authorized the surgeries as of February 9, 2011.  Eventually, Smith underwent the cervical fusion surgery on March 2, 2011, and the carpal tunnel release surgery on March 28, 2011.  While Union

---

[5]  *See* Miss. Code Ann. § 71-3-15(1) ("Should the employer desire, he may have the employee examined by a physician other than of the employee's choosing for the purpose of evaluating temporary or permanent disability or medical treatment being rendered under such reasonable terms and conditions as may be prescribed by the commission.").

ultimately authorized these procedures, Smith emphasizes that it took nearly eight months for him to receive authorization. On this point, Smith states that "[a] jury could reasonably conclude the initial utilization review was improper; requiring its own medical examiner submit diagnostic test [sic] he needed for utilization review was improper; or, the failure of Union to appeal the denial by Forté and the delay in acquiring his opinion were all unjustified legally and factually." Further, Smith argues that a jury could find that "after Dr. Parsioon indicated the carpel [sic] tunnel surgery was reasonable and proper, the refusal of Union to authorize the surgery was outrageous and knowingly appreciated by Union[.]"

*Third Alleged Instance of Delay:*

Smith next alleges delay concerning his cubital tunnel surgery request. After undergoing the carpal tunnel release surgery and the cervical spine surgery, Smith continued to receive various forms of medical aid, including physical therapy and multiple medications. During this time period, Dr. Calandruccio recommended that Smith undergo a cubital tunnel release surgery. Accepting his advice, Smith eventually informed Dr. Calandruccio that he wished to undergo the procedure. On October 24, 2011, Dr. Calandruccio informed Union that Smith had agreed to undergo the surgery. Union submitted the request to utilization review, and Forté issued a non-authorization on November 11, 2011, which was not appealed.

Instead, after unsuccessfully attempting to discuss the denial with Union and reach a compromise, Tompkins—on Smith's behalf—filed a motion to compel authorization of the surgery on November 23, 2011. At some point after the motion was filed, Union—through its counsel, Jeff Skelton—indicated that it again intended to exercise its statutory right to have Smith evaluated by a physician of its choosing. Therefore, the administrative law judge held the motion in abeyance.

The parties dispute exactly what occurred at this point. Smith provides a copy of a letter from Tompkins to Skelton, wherein he "ask[ed] that the evaluation be scheduled immediately" and further stated "[p]lease note . . . [that] the employer waited almost six (6) weeks to request an EME." Smith states that he did not hear anything in response and was therefore forced to file an additional motion to compel the surgery, alleging that Union "has not responded to continued requests for the EME to be scheduled and an appointment date has not been set as of the filing of this motion."

In contrast, Union states that it "attempted to schedule the EME appointment with Dr. Riley Jones' office immediately . . . and Dr. Jones' first availability was at the end of February, 2012." Moreover, Union maintains that the appointment had already been set when Smith filed the motion to compel on January 5, 2012, and specifically argues that "[t]he time lapse between the agreement to proceed with an EME and the date that the EME was performed was due to Dr. Jones' availability, not due to any delay occasioned by Union."

Nevertheless, Smith was eventually seen by Dr. Jones on February 28, 2012. Upon examining Smith, Dr. Jones agreed that the cubital tunnel release surgery was reasonable and necessary. Smith states that the tentative date for the surgery was April 5, 2012, but Union did not provide authorization in time. Consequently, Smith filed an additional motion to compel on April 2, 2012, requesting authorization for the surgery. The surgery was eventually performed on April 16, 2012.

As made apparent by the recitation of these facts, the parties dispute many underlying facts concerning the cubital tunnel release surgery. Smith argues that, considering the factual background as a whole, it is reasonable to conclude that Union's conduct was in bad faith and only for the purpose of causing delay.

*Fourth Alleged Instance of Delay:*

Smith's fourth allegation of delay concerns his request for a neurological evaluation. On May 21, 2012—a little over a month after the cubital tunnel release surgery was performed, Dr. Calandruccio recommended that Smith undergo a neurological evaluation after he complained of dizziness, nausea, and vomiting. After multiple attempts to communicate with Union about setting up an evaluation, Smith filed a motion to compel on June 25, 2012. Smith states that Union remained unresponsive to his continued attempts to communicate thereafter.

The parties eventually resolved the issue, and Smith was evaluated by Dr. Mohammad Assaf on August 2, 2012. Following the evaluation, Dr. Assaf completed a progress report and "recommended an MRI of the brain and a carotid ultrasound[.]" However, Union argues that it "had legitimate questions regarding whether the recommended tests were related to the work injury, and these questions were not addressed by Dr. Assaf in the only report he provided." Therefore, Union did not approve the requests, and Smith filed a motion to compel on September 10, 2012. A hearing on the motion was held on October 29, 2012, and the administrative law judge entered an order on November 2, 2012, instructing Union to approve the tests. Thereafter, Union authorized the tests, and they were performed on November 26, 2012.

Smith contends that Union's strategy was simply to wait until the administrative law judge ordered it to approve the tests before it would do so. Therefore, Smith alleges that Union's conduct was done for no purpose other than delay and constituted bad faith.

Ultimately, Smith relies on the aggregation of these facts to support his bad faith delay claim. Union filed the present motion for summary judgment on November 7, 2016. Smith responded, and Union filed a reply. Upon due consideration of the parties' arguments, along

with relevant authorities, and for the reasons set forth hereinafter, the Court finds that the motion is not well-taken and should be denied.

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

At the summary judgment stage, the moving party "bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact." *Smith v. Jaco*, 2013 WL 1736660, *2 (N.D. Miss. Apr. 19, 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party shows that there is no genuine dispute as to any material fact, the nonmoving party "must come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011).

At this point in the proceedings, the district court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). However, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Smith*, 2013 WL 1736660, at *2 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89

L.Ed.2d 538 (1986)).  Moreover, the nonmoving party cannot prevent summary judgment with "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

"If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1075.  However, it is important to note that "[s]ummary judgment is [] improper where the court merely believes it unlikely that the non-moving party will prevail at trial." *U.S v. Miss. Dep't of Pub. Safety*, 309 F.Supp.2d 837, 840 (S.D. Miss. 2004) (citing *Nat'l Screen Serv. Corp. v. Poster Exch., Inc.*, 305 F.2d 647, 651 (5th Cir. 1962)).

### Discussion

As an initial matter, the Court notes that "[u]nder Mississippi law, workers' compensation is the exclusive remedy for an injury occurring in the course of employment." *Casey v. Liberty Mut. Ins. Co.*, 308 F. App'x 743, 745 (5th Cir. 2009) (citing Miss. Code Ann. § 71-3-9).  However, "Mississippi jurisprudence has held this exclusive remedy provision does not bar an injured employee's common law tort action against an insurance carrier for the commission of an intentional tort *independent of the accident compensable under the workers' compensation scheme*." *Rogers v. Hartford Accident & Indem. Co.*, 133 F.3d 309, 312 (5th Cir. 1998) (citing *S. Farm Bureau Cas. Ins. Co. v. Holland*, 469 So.2d 55, 58 (Miss. 1984)) (emphasis added).[6]  Therefore, "[i]f the injury is not compensable under [the Act], the Act does not provide the exclusive remedy." *Holland*, 469 So.2d at 58 (quoting *Miller v. McRae's Inc.*, 444 So.2d 368, 372 (Miss. 1984)).

---

[6]  *See also Casey*, 308 F. App'x at 745 (holding that the exclusive remedy provision "does not bar the independent, intentional tort for bad faith refusal to honor an insurance contract obligation").

In the case at bar, Smith's injury occurred in the course of his employment, as he fell from the ladder while changing a lightbulb in his classroom. The parties do not dispute this fact. As a result, workers' compensation is his exclusive remedy for those injuries. His bad faith claim, however, is independent of the accident itself and is based upon Union's alleged failure to investigate his medical needs, in conjunction with its delay in providing authorization for necessary medical care. He cannot obtain workers' compensation for the injuries he allegedly incurred because of the delay, and, as a result, the Court finds that the exclusive remedy provision does not bar his bad faith claim.

Moreover, because the parties discuss it in their briefs, the Court feels compelled to note the distinction between denial of a claim and delay in providing authorization. While many of the Mississippi cases concerning bad faith set forth the elements in terms of *denial*, the case at hand concerns Union's alleged *delay* in authorization of reasonable and necessary medical care. Specifically, Smith states that "[t]he issues here turn upon whether or not Union had a legitimate or arguable reason for *delaying* the medical care and treatment requested by the various physicians and whether such delays and withholding authorization were willful, malicious, or as a result of utter indifference or neglect." Precedent does exist to support Smith's claim that he may proceed on a theory of bad faith *delay*. *See, e.g., Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 n.1 (5th Cir. 2008) ("Inordinate delays in processing claims and a failure to make a meaningful investigation have combined to create a jury question on bad faith."); *Casey*, 308 F. App'x at 745-46 (recognizing that the issue in the case was "whether [the defendant] had a legitimate or arguable reason for *delaying* payment of [the plaintiff's] benefits and whether such *delay* was a willful or malicious wrong.") (emphasis added). Thus, it appears clear to this Court that Smith may proceed on a theory that Union delayed authorization of necessary medical care

and treatment and failed to conduct a sufficient investigation in a timely fashion in bad faith. However, the Court also notes that this distinction results in this case being in a different posture than many other bad faith cases. In many typical insurance bad faith cases, the underlying claim concerns whether coverage actually existed, and the bad faith claim concerns the plaintiff's request for punitive damages. In this case, however, the underlying claim is for emotional distress, which Smith claims was caused by Union's bad faith delay, and the request for punitive damages is based upon the egregious nature of that same conduct.

Prior to discussing the substance of Smith's claims, the Court additionally notes that Union raises an argument that his claims are procedurally barred due to the fact that he did not obtain a final ruling from the Commission that his requests were reasonable prior to filing the present action in this Court. Specifically, citing Section 71-3-15 of the Mississippi Code, Union avers that "[d]isputes over whether treatment is reasonable and/or necessary are to be resolved though the Commission." Further, Union contends that "a bad faith lawsuit based upon the carrier's refusal to pay for disputed medical services and supplies cannot be maintained absent the Mississippi Workers' Compensation Commission's *prior determination* that those services and supplies were reasonable and necessary." Union emphasizes *Walls v. Franklin Corp.*, 797 So.2d 973, 975 (Miss. 2001), to support this position.

Union's reliance on this authority to support his position in the present action is misplaced. In *Walls*, the Mississippi Supreme Court held that the plaintiff "could not maintain a bad faith action for refusal to pay for disputed medical services and supplies absent the Commission's prior determination that those services and supplies were reasonable and necessary." *Id.* at 977. In the Court's view, *Walls* is distinguishable because it related to the carrier's failure to provide reimbursement for medical supplies the plaintiff purchased after

making several requests for payment but receiving no response from the carrier. Thus, it was a bad faith denial case. In contrast, this case does not involve the denial of payment but, rather, Union's delay in providing authorization and failure to promptly investigate whether Smith's requests should be granted. This distinction is critical. While it is logical for a trial court to require a plaintiff pursuing a bad faith denial claim to obtain a prior finding from the Commission that his request was reasonable and necessary, the same purpose would not be furthered by such a requirement in this case. Smith's claim is not that Union wrongfully denied his requests. In fact, Smith does not dispute that Union ultimately authorized each of his requests concerning the four aforementioned instances. His claim is based upon the fact that Union wrongfully stalled and delayed in providing authorization and failed to conduct an investigation of the reasonableness of his requests in a timely fashion. A finding by the Commission that the medical services were reasonable and necessary would have no bearing on whether or not Union's alleged delay was in bad faith. Therefore, because the reasoning behind *Walls* would not be furthered, the Court declines to apply it as a bar to Smith's claims in this case.

The Court now turns to the substance of Union's arguments. As stated above, relying on his allegations of Union's bad faith, Smith has asserted a claim for emotional distress caused by Union's bad faith delay and also requests punitive damages due to the egregious nature of that conduct. The Court will first address Smith's underlying bad faith claim and then turn to his claim for punitive damages, as Union has urged that summary judgment is appropriate as to each of them.

*Underlying Bad Faith Claim:*

To prevail on a bad faith claim under Mississippi law, a plaintiff must establish "(1) a contract of workers' compensation insurance existed between the defendant and the plaintiff's employer; (2) the carrier denied the plaintiff's compensable workers' compensation claim without a legitimate or arguable reason; and (3) the denial of benefits constitutes a willful and intentional or malicious wrong." *Casey*, 308 F. App'x at 745 (quoting *Rogers*, 133 F.3d at 312).[7]

Here, the parties do not dispute that a workers' compensation contract existed between Union and Desoto County School District—Smith's employer. Therefore, the first element is undoubtedly satisfied. Consequently, the crux of the Court's analysis concerns the second and third elements—whether Union had a legitimate or arguable reason to delay authorization of the requested medical care and whether that delay was willful and intentional or malicious. As to these elements, the Court finds that genuine issues of material fact remain in dispute, precluding summary judgment.

As set forth in great detail above, there are multiple allegations of delay in Union's handling of Smith's requests for medical treatment. However, Union correctly contends that delay alone is insufficient. Rather, Smith must show that Union lacked an arguable or legitimate basis for the delay, as Mississippi law makes clear that he cannot recover "if the carrier has a reasonable cause for such denial or delay." *Liberty Mut. Ins. Co. v. McKneely*, 862 So.2d 530, 533 (Miss. 2003). In determining whether an arguable or legitimate basis for the delay existed, courts should consider the totality of the circumstances. *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 71-72 (5th Cir. 2014). Moreover, the Mississippi Court of Appeals has made

---

[7]   The third element has also been described as showing that the carrier "acted with willful, malicious, gross, negligence, or reckless disregard for the rights of the claimant." *Pilate v. Am. Federated Ins. Co.*, 865 So.2d 387, 391 (Miss. Ct. App. 2004).

clear that "[n]ot all delays in the payment of claims are actionable." *Pilate*, 865 So.2d at 394.

Citing a secondary source, the court further stated:

> Obviously, some delay in evaluating claims is inevitable, legitimate and socially useful. Insurers are entitled, and in fact legally obligated, to investigate fully the legitimacy of claims, and some skepticism in evaluating claims is appropriate. Sine an insurer has an obligation under Mississippi law to investigate claims, discharging that duty is not bad faith. However, an inadequate investigation of a claim may create a jury question on the issue of bad faith.

> *Id.* (quoting Jeffrey Jackson, *Mississippi Insurance Law* § 12:5 (2001)).

Concerning the second bad faith element, Union argues that it had a reasonable basis for the delays in authorization of the various requested medical services. As to the allegations concerning the additional physical therapy sessions and the epidural steroid injection, Union emphasizes that it relied upon Forté's non-authorization but ultimately conceded the issue and permitted Smith to receive the requested treatment. Union attempts to characterize this conduct as favorable toward its side—that it authorized treatment which it was not required to do. Smith, however, contends that this conduct actually weighs in his favor, stating that it shows Union had been acting in bad faith by not authorizing the request earlier. Additionally, Smith highlights the fact that Union never provided notice that the request services were being denied.

As to the carpal tunnel release surgery, while Union was certainly entitled by statute to have its own physician evaluate Smith to determine the necessity of the surgery, there is a dispute as to the cause of the delay between the time Union made the decision to have Dr. Parsioon evaluate Smith and the time when the evaluation actually occurred. Smith, of course, avers that it was part of Union's broad delay scheme, while Union argues that it was due to a scheduling conflict. There was also a delay in authorization of the tests that Dr. Parsioon ordered upon completing the evaluation—the cause of which the parties dispute.

Likewise, the parties dispute the cause of the delay in authorization of the cubital tunnel release surgery, making largely similar arguments as they did concerning the previous surgery. And regarding the recommended neurological evaluation, the parties' explanations of the facts diverge. Ultimately, Union did wait until after the administrative law judge ordered it to approve the evaluation. Union argues that its failure to authorize the tests was due to a legitimate concern as to whether the neurological issues Smith was experiencing were related to the accident. Smith argues that, when considered in light of the various other delays, it is reasonable to conclude that Union simply chose to delay in bad faith.

In short, the Court finds that summary judgment is not proper on this point. Based upon a review of the facts, it is clear that many delays occurred. Of course, the delays may have been due to a reasonable cause; however, Union has not convinced the Court that such a cause existed. Stated differently, while it is possible that Union's reasons are true and provide an arguable basis for denying the requests, it is also possible that these reasons were not true and that the company simply wished to delay authorization in bad faith, as Smith suggests. At this stage in the proceedings, the Court must view all facts in the light most favorable to Smith. Doing so, the Court finds that summary judgment is not proper on this point.

The Court now turns to the final bad faith element, which is whether the delay was done willfully or maliciously. Smith avers that Union's delays in the processing of his requests were absolutely done willfully and intentionally and were done only for the purpose of causing delay. Union, predictably, disputes this allegation and claims that the delays were all legitimate and had nothing to do with a desire to prevent Smith from receiving the medical attention he needed. On this point, there is, in the Court's view, a factual dispute which cannot properly be decided at the summary judgment stage. *See Kinsella v. OfficeMax, Inc.*, 2017 WL 1274054, *4 (N.D. Miss.

Apr. 3, 2017) (citing *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980)) ("At the summary judgment stage, the Court's function is not to resolve factual disputes but, rather, simply determine if such disputes exist.").

With this precedent in mind, the Court finds that Smith also survives summary judgment as to this element. A genuine dispute remains as to Union's motivation for the delay—namely, whether it was done willfully and intentionally. Based upon a review of the evidence presently before it, the Court finds that a jury could reasonably rule in Smith's favor on the issue. For that reason, summary judgment is not proper.

Having determined that summary judgment is not proper as to the bad faith claim, the Court feels compelled to note—and, put bluntly, reject—an additional argument made by Union. In its brief, Union avers that Smith's lawsuit is barred due to his failure to take action. Specifically, citing the Mississippi Court of Appeals' decision in *Pilate*, 865 So.2d at 399, Union avers that the Court should take into account Smith's contribution to the delay. Then, Union emphasizes that "[Smith]'s counsel simply filed motions to compel with the Commission. The [m]otions were not filed immediately after the utilization review determinations, and in some instances were substantially delayed by [Smith]. In many instances, the motions were unnecessary and filed after treatment was authorized. Furthermore, [Smith] did not seek immediate hearings under Miss. Code Ann. § 71-3-17(b)."

This argument is not well-taken. Smith did in fact take action upon being made aware that his requests were being denied. He filed numerous motions to compel and sent multiple letters to Union, in which he appeared to have tried to streamline the process of receiving treatment. In sum, the Court finds Union's attempt to portray Smith as sitting back and taking no action to be disingenuous, as he did, in the Court's view, take multiple steps to attempt to receive

authorization for the requests.  Union certainly may raise this issue at trial before the jury as a consideration to be taken into account in evaluating Smith's claim of delay; the Court does not, however, find that Smith is barred from bringing this claim altogether.

*Punitive Damages Claim:*

As stated above, Smith asserts that Union's conduct was so egregious as to warrant punitive damages.  And in the present motion, Union avers that summary judgment is proper as to that request.

In its brief, Union states that "[b]oth the Mississippi Supreme Court and the Fifth Circuit have been extremely reluctant to allow punitive damages in cases where the insurer delayed, but did not deny coverage."  Union then sets forth multiple cases wherein both federal and state courts have granted summary judgment as to punitive damages on the theory of bad faith delay. Thus, while Union did not specifically advocate for a *per se* rule that punitive damages are not recoverable on a bad faith delay theory, it appears that it is essentially making that argument.  In addition, Union argues that Smith has not come forward with sufficient facts to support his claim for punitive damages, stressing the high burden that Smith must meet in order to succeed on a punitive damages claim.  For the reasons set forth below, the Court rejects Union's argument on this point.

Under Mississippi law, a plaintiff seeking punitive damages must meet a high standard, as the punitive damages statute states that "[p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud."  Miss. Code Ann. § 11-1-65(1)(a).  Punitive damages are not favored under Mississippi law; "they are

considered an extraordinary remedy and are allowed 'with caution and within narrow limits.'" *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So.2d 620, 622 (Miss. 1988) (quoting *Standard Life Ins. Co. v. Veal*, 354 So.2d 239, 247 (Miss. 1978)).

In the context of insurance delay/denial, the plaintiff must show that the insurer delayed or denied the claim "(1) without an arguable or legitimate bases, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *Broussard v. State Farm Fire and Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008); *GuideOne Elite Ins. Co. v. Mount Carmel Ministries*, 2017 WL 344278, *6 (5th Cir. Jan. 23, 2017).

While Smith clearly bears a heavy burden to prevail at trial on his claim for punitive damages, the Court finds that summary judgment should not be granted. The Court first rejects Union's argument that Smith is barred from recovering punitive damages because his only allegation is that Union delayed—rather than denied—his requests for authorization. Upon review of the cases cited by Union, the Court finds that the rationale behind those decisions was not to prevent punitive damages from ever being recovered in a bad faith delay case but, instead, to prevent punitive damages for bad faith delay based on those particular facts. *See, e.g., Caldwell v. Alfa Ins. Co.*, 686 So.2d 1092, 1098 (Miss. 1996) (finding that punitive damages were not proper in a delay case only *after* finding that the insurance company had a reasonable explanation for the delay). The Court is unwilling to bar Smith from asserting a claim for punitive damages solely based upon the fact that Union eventually did provide authorization. In the Court's view, a plaintiff could potentially be entitled to punitive damages in a delay case—

including this one, possibly—and, therefore, will not adopt the harsh *per se* rule for which Union indirectly advocates.[8]

Union's second argument is that Smith has not provided sufficient evidence to support his claim for punitive damages. Above, the Court set forth in great detail the underlying facts of the case. Moreover, the Court analyzed and ultimately held that many factual disputes remain, precluding summary judgment on Smith's compensatory bad faith claim. For the same reason, the Court finds that summary judgment is not proper as to Smith's punitive damages claim. While he must meet a high standard at trial to prevail on this claim, that fact alone is an insufficient basis for the Court to rely upon to grant summary judgment. Consequently, this argument is rejected.

The Court is, of course, aware that punitive damages are not available unless and until the trier of fact determines that the claimant is entitled to compensatory damages. *See* Miss. Code Ann. § 11-1-65(1)(b),(c). If the jury determines at trial that Smith is entitled to compensatory damages, the Court will hold an evidentiary hearing at that time to determine if the punitive damages issue should be submitted to the jury. *Id.* However, relying on the foregoing analysis, the Court will not dismiss Smith's punitive damages claim at this stage in the proceedings.

---

[8]   In addition to rejecting Union's argument on this point, the Court feels compelled to comment on a statement by defense counsel in his brief. Arguing that punitive damages are not warranted in a delay case, counsel states that "[t]he Mississippi Supreme Court explicitly held that '**the wrongful denial of a valid claim . . . is the linchpin for submission of the punitive damages to the jury**.' *Caldwell v. Alfa Ins. Co.*, 686 So.2d 1092, 1098 (Miss. 1996) (emphasis added)." In fact, the case cited actually states that "the wrongful denial of a valid claim **or conduct of such an egregious nature as in *Travelers*** is the linchpin for submission of the punitive damages to the jury." *Caldwell*, 686 So.2d at 1098 (emphasis added). *Travelers* was an egregious delay case, wherein the Mississippi Supreme Court held that a punitive damage instruction was proper. *Travelers Indem. Co. v. Wetherbee*, 368 So.2d 829 (Miss. 1979).

Union's counsel either misread *Caldwell* or, perhaps, presumed that the Court would not read the case. Counsel is sorely mistaken as to the latter, and the Court is frankly disappointed that counsel would utilize such a tactic. Put simply, he who mischaracterizes the law by camouflaging it through an ellipsis does so at some risk.

**Conclusion**

"[S]ummary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party." *Simmons v. Ford Motor Co.*, 2006 WL 3760521 *2 (S.D. Miss. Dec. 15, 2006) (citing *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Reviewing the record as a whole, the Court finds that a rational jury could find for Smith. Consequently, summary judgment is not appropriate.

Accordingly, it is hereby ORDERED that Union's *First Motion for Summary Judgment* [138] is DENIED.

SO ORDERED, this the 6th day of June, 2017.


<u>**/s/ MICHAEL P. MILLS**</u>
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**