IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ANTHONY SMITH                                                                                                  PLAINTIFF

v.                                                        Civil Action No.: 3:15-cv-00162-MPM-RP

UNION INSURANCE COMPANY                                                DEFENDANT

## ORDER

Presently before the Court are eight motions *in limine* filed by defendant Union Insurance Company ("Union"). Plaintiff Anthony Smith ("Smith") filed a response as to each motion, conceding some of them and setting forth his arguments in opposition to many of them. The Court has reviewed the parties' submissions, in conjunction with relevant authorities, and is now prepared to rule.[1]

### Standard

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Harkness v. Bauhaus U.S.A., Inc.*, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015) (additional citations omitted). In this context, "[e]vidence should not be excluded . . . unless it is clearly inadmissible on *all potential grounds*."[2] *Id.* (quoting *Fair v. Allen*, 2011 WL 830291, at *1 (W.D. La. Mar. 3, 2011)) (emphasis added).

---

[1] Because the Court has set forth the underlying facts of the case multiple times in previous orders, it will refrain from doing so again here. Rather, it will turn directly to the substance of the present motions.
[2] *See also U.S. v. Porter*, 2016 WL 740393, at *3 (E.D. La. Feb. 25, 2016) (quoting *Harris v. City of Circleville*, 2010 WL 816974, at *2 (S.D. Ohio Mar. 5, 2010)) ("[A] court should not make a ruling *in limine* unless the moving party meets its burden of showing that the evidence in question is *clearly inadmissible*.") (emphasis added).

Evidentiary rulings "should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context." *Rivera v. Salazar*, 2008 WL 2966006, at *1 (S.D. Tex. July 30, 2008) (citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)). Moreover, the "[d]enial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Gonzalez v. City of Three Rivers*, 2013 WL 1150003, at *1 (S.D. Tex. Feb. 8, 2013) (quoting *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993); *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)).

This Court has previously emphasized that "[t]he purpose of motions *in limine* is not to re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence, but, rather, to identify *specific* issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion *in limine*." *Maggette v. BL Development Corp.*, 2011 WL 2134578, at *4 (N.D. Miss. May 21, 2011) (emphasis in original); *see also Estate of Wilson v. Mariner Health Care, Inc.*, 2008 WL 5255819, at*1 (N.D. Miss. Dec. 16, 2008) ("[M]otions *in limine* should be narrowly tailored to address issues which will likely arise at trial and which require a pre-trial ruling due to their complexity and/or the possibility of prejudice if raised in a contemporaneous objection."). Additionally, a motion "set[ting] forth a lengthy laundry list of matters, most of them of a highly vague nature . . . constitutes an improper 'shotgun' motion which fails to meet this court's standards for motions *in limine*." *Estate of Wilson*, 2008 WL 5255819, at *1.

**Discussion**

The Court will address each of Union's eight motions in turn.

*Motion to exclude testimony or other evidence regarding any physical injury [170]:*

In this motion, Union argues that the Court should exclude any evidence relating to Smith's physical injuries or physical limitations, stating that the complaint "alleges that Union's actions resulted in pain, discomfort and emotional distress, including worry and axiety [sic]. . . [but] does not make a claim for any physical injury, exacerbation of physical injury and/or permanent physical limitations as a result of Union's alleged delay." Union additionally emphasizes multiple responses to interrogatories, wherein Smith makes no mention of any physical injury or limitations.

In response, Smith avers that "[t]o the extent that [Union's] Motion seeks to exclude damages for the physical aspect of worry, anxiety, emotional distress together with unnecessarily incurred pain and discomfort caused by [Union's] delay and constructive denial for medical care[, Union's] Motion is misplaced. It is conceded that there is no allegation of any permanent physical limitation but Plaintiff has plainly alleged unnecessarily incurred pain and discomfort caused by delay in medical care and immense and ongoing worry, anxiety and emotional distress caused by that delay that are indeed physical injuries and should not be stricken."

To the extent it is opposed, Union's motion will be denied. In his prayer for relief, Smith requests compensation for, among other things, "[p]ast unnecessarily incurred pain and discomfort caused by Defendants [sic] delay and constructive denial for medical care[.]" In the Court's view, this prayer for relief shows Smith's intent, from the outset, to seek recovery for physical injuries suffered due to Union's conduct—specifically, pain and discomfort. Although his stated cause of action was for intentional/negligent infliction of emotional distress, he never

3

stated that he did not wish to seek damages for the physical manifestations of his emotional injuries, and Union's assertions to the contrary are erroneous. As a result, this request will be denied. Union may, however, submit proposed jury instructions concerning damages that address its concerns, and the Court will entertain those submissions at the appropriate time. Nevertheless, at the present time, the Court will grant the motion to the extent it is unopposed and deny it in all other respects.

*Motion to exclude evidence concerning the Mississippi Workers' Compensation Act not specifically pled in the complaint [172]:*

The Court now turns to Union's request that the Court exclude "any testimony or other evidence regarding the denial or delay in authorizing or paying any benefits in the underlying workers' compensation claim that have not been specifically pled in the [c]omplaint." In the motion, Union contends that although this action has been narrowed to four specific alleged instances of delay, Smith will likely attempt to offer evidence concerning other delays in receiving benefits.

In his reply, Smith states that "[t]o the extent [Union] seeks to exclude damages not pled, the Motion is conceded."

Accordingly, the motion will be granted, and Smith will not be permitted to introduce evidence concerning damages that were not pled.

*Motion to exclude evidence regarding forty-five day period for scheduling and completion of employer medical evaluations [174]:*

In its next motion, Union asks the Court to exclude any testimony or other evidence concerning a forty-five day requirement for scheduling or completing an employer medical evaluation ("EME"). Union contends that "[t]here is no such requirement contained in any statute, rule, fee schedule or other applicable authority that applies to the issues raised in

4

[Smith's] complaint." This motion stems from Smith's response to Union's motion for summary judgment, wherein Smith made reference to a forty-five day requirement for conducting an EME in the 2013 medical fee schedule. However, the parties agree that the 2007 fee schedule—not the 2013 schedule—is applicable to this action. Therefore, Union argues that any reference to the new requirement in the 2013 fee schedule is irrelevant and should be excluded.

Smith states that he does not contest the motion. He does emphasize, however, that in referencing the 2013 fee schedule, he was simply responding to Union's motion for summary judgment and pointing out that the conduct at issue in this case has now been banned by the Mississippi Workers' Compensation Commission.

The Court appreciates the point Smith made in his response to Union's summary judgment motion and recognizes that the 2013 fee schedule is not applicable in the case at hand. Consequently, it will grant the motion and exclude any references to the requirements of the 2013 fee schedule.

*Motion to exclude testimony and references to Smith's loss of income [178]:*

Union next requests that the Court prohibit testimony or reference to Smith's loss of income as an athletic trainer. At the time Smith was injured, he held a part-time job as an athletic trainer for the sports teams of the Desoto County School District, in addition to his teaching position.[3] Because Smith was unable to complete the tasks required of an athletic trainer due to the injuries he sustained in the accident, he was replaced in November 2009—about three months after the accident occurred.

In the present motion, Union avers that any lost income Smith experienced due to his inability to perform his duties as an athletic trainer can only be traced to his initial injuries when

---

[3] For this position, Smith was employed and paid by Dr. Claiborne Christian—not the school district.

he fell from the ladder—not the alleged delays that form the basis for this action. Stated differently, Union contends that Smith would not have been able to perform his duties as an athletic trainer regardless of whether it had delayed or not and he therefore should not be permitted to recover damages for that loss of income. Consequently, Union requests that any evidence concerning income Smith would have earned in his capacity as an athletic trainer be excluded as irrelevant.

In response, Smith states that "[t]here is not now nor has there ever been a claim in this litigation for loss wages [sic] because [he] was not able to work as a personal trainer, only because of delay in his being able to return to work, any kind of work." Smith then concedes that Union's motion is proper and unopposed. It will be granted.

*Motion to exclude testimony and reference to Smith's familial loans, refinancing, or similar expenses [180]:*

Throughout discovery, Smith has contended that he was forced to borrow money from family members, refinance his home, and incur litigation costs due to Union's conduct, and that these costs resulted in increased stress and anxiety for him. In the present motion, Union states that evidence concerning these costs should be excluded because "[n]one of these alleged financial damages/expenses have been formally identified, and no additional information regarding the same has been produced." Moreover, Union emphasizes Smith's answer to a supplemental interrogatory, wherein he was asked to provide a calculation of his alleged monetary damages and responded as follows:

> SUPPLEMENTAL ANSWER: The expenses and litigation costs required and as set forth in my Complaint [1] Subparagraph d. page 10, are those related to litigation expenses, expert witness fees, etc. They are not calculable until they are allowed in a post-trial motion for these fees and expenses and are the only expenses that I claim.

Relying on this response and the fact that he has not provided any documentation of expenses incurred, Union avers that Smith should be prohibited from introducing evidence or referencing them at trial.

Smith opposes the motion. He states that no documentation concerning the money he borrowed from family members was produced in discovery because no such documentation exists. Moreover, he argues that while he "never provided the exact amount borrowed from his in-laws, the fact he did indeed have to *borrow* is relevant to his claim as set forth in paragraph 16 of the Complaint [1] that 'Plaintiff was required to remain unnecessarily in discomfort, pain and unable to return for work for months and months, while [Union] simply did nothing to provide authorized medical care.'" Thus, Smith's position is that he suffered injuries, such as stress and worry, because he was required to borrow money and refinance his assets while Union unnecessarily delayed in authorizing medical treatment, preventing him from recovering more quickly.

The Court finds Smith's response persuasive. Despite the fact that he does not have documentation showing that he borrowed money and has not disclosed the amounts of those loans, the fact that he had to do so—regardless of the amount—is relevant to his damages. Of course, if Union is concerned that Smith may not be telling the truth about the loans or suspects that the loans were for an inconsequential amount, it may attempt to bring out those points at trial on cross-examination. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). In the Court's view, this avenue is sufficient to address Union's concerns. The motion will be denied.

*Motion to exclude testimony and references regarding the termination and personnel file of Jorge Vallejo [182]:*

Union's next motion concerns the personnel file of Jorge Vallejo. Vallejo was employed as an adjuster by Union at the time Smith's injury occurred. He was assigned to Smith's workers' compensation claim on February 10, 2010. Vallejo was ultimately terminated by Union for ineffective job performance. His personnel file includes disciplinary write-ups, evaluations, and other documentation concerning his job performance and termination. As to the personnel file, Union states that "[d]espite Vallejo's personnel file and termination documentation making no reference to the handling of [Smith's] claim, Union anticipates that [he] will attempt to introduce this evidence at trial." Union argues that the personnel file is inadmissible because it is "irrelevant, prejudicial, and evidence of a subsequent remedial measure." Thus, its position is that the evidence should be excluded under FRE 401, 402, 403, and 407.

In opposition, Smith states that he does not plan to introduce Vallejo's entire personnel file; rather, "he intends to introduce five (5) documents (P.42, 43, 44, 45, 46) that show, during the time frame relevant to this action, that Vallejo did not return telephone calls or emails which led to unnecessary delay in injured workers receiving timely medical care. He showed absolute indifference to the well-being of workers' compensation claimants insured by Union, of which Smith was one."

Union's motion is well-taken. While the fact that Vallejo often failed to return phone calls or emails may have some probative value, it is far outweighed by the potential prejudicial effect that it may cause the jury. In the Court's view, there is a significant probability that admitting documents showing the adjuster assigned to Smith's case often failed to return calls in

other cases would unnecessarily inflame the jury and cause unwarranted prejudice against Union in this case.

Additionally, the Court notes that it is not clear which documents Smith intends to introduce from the file. As mentioned above, his response states that he "intends to introduce five (5) documents (P. 42, 43, 44, 45, 46) that show . . . that Vallejo did not return telephone calls or emails which led to unnecessary delay in injured workers receiving timely care." Presumably, Smith is referencing pages 42-46 of the personnel file attached to Union's motion. The Court has reviewed these specific documents, along with the rest of the file, and finds that their probative value is minimal. The documents concern Vallejo's job performance as a whole—not his performance in this specific case. They will be excluded, and the motion will be granted.

*Motion to exclude certain testimony of Deborah Moore [184]:*

Union next argues for the exclusion of certain testimony of Deborah Moore. Moore is, or was at the relevant time period, employed as a paralegal for Shane Tompkins—the attorney who represented Smith during the administrative process in this case. The motion relates to statements made by Moore in her deposition, wherein she stated that Jeff Skelton—Union's counsel during the administrative process—made comments to her about Jorge Vallejo's handling of Smith's case. Moore's deposition testimony relevant to this motion was:

> **Q.** Did [Skelton] ever explain to you what was going on or why there was a problem?
> **A.** The majority of the time, he would say that he had been unable to reach Mr. Jorge. He would be unable to reach him, or he wouldn't call him back. And he would say, "I'm doing the best I can. I can't do much when my client won't call me back."
> . . .
> **Q.** You mentioned it was the same conversation all the time when you called [Skelton]. What would be his response?
> **A.** "I'm waiting to hear back from my adjuster. My adjuster hasn't called me back yet. I haven't been able to get in touch with my adjuster yet."

Union argues that "[a]ny testimony from Moore and/or arguments or references from [Smith's] counsel to such testimony regarding Skelton's alleged inability to contact Vallejo are irrelevant to the allegations in [Smith's] Complaint." Union's contention is that it complied with all utilization review guidelines, making the fact that Skelton was allegedly unable to make contact with Vallejo concerning medical treatment and testing that had already been non-authorized have no probative value.

The Court is unpersuaded by Union's argument. Unlike the personnel file that the Court addressed above, which related to Vallejo's treatment of other cases, Moore's proposed testimony directly relates to Smith's claim. In fact, part of Smith's allegations is that he attempted to contact Union but was unable to obtain any help to promptly resolve his concerns regarding the non-authorizations. Therefore, the Court finds that this testimony, which corroborates Smith's theory that it was difficult to communicate with Union, is relevant. However, it also recognizes that this testimony may possibly be inadmissible in some contexts, and it will have to make such rulings in the context of trial. *See Gonzalez*, 2013 WL 1150003, at *1 ("Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded."). Therefore, Union may raise its objection to this evidence at trial; however, without the context of trial, the Court cannot definitively conclude that the testimony is inadmissible on all potential grounds. Consequently, the motion will be denied.

*Motion to prevent argument that assertion of privilege equates admission of liability, fault, or other similar contention [186]:*

Union's final motion relates to a detailed log containing documents that "largely relate to communications between Skelton and his employees." Although Union produced the documents

in discovery, it asserts that they are inadmissible at trial pursuant to FRE 502. In the motion, Union states that "though the communications are lawfully protected, Union anticipates that [Smith] will attempt to argue at trial the Union's non-production of the communications provides an inference that the documents contain damaging evidence. . . [and that] [a]ny testimony, argument, reference, or mention, directly or indirectly, that Union's non-production of privileged communications provides an inference of liability, fault or similar contention, should [] be excluded."

In his response, Smith avers that "[w]hile it is certain these documents contain damaging evidence, Plaintiffs [sic] attorney has never indicated they would attempt to make such an assertion that hiding behind the privilege as Union has done in this matter provides an inference of liability, fault or other contention." Thus, it appears that, without explicitly stating so, Smith concedes this motion. It is well-taken and will be granted.

## Conclusion

Relying on the foregoing analysis, it is hereby ORDERED that:

(a) Union's *Motion to exclude testimony or other evidence regarding any physical injury* [170] is GRANTED IN PART;

(b) Union's *Motion to exclude testimony or other evidence regarding any physical injury* [172] is GRANTED;

(c) Union's *Motion to exclude evidence regarding forty-five day period for scheduling and completion of employer medical evaluations* [174] is GRANTED;

(d) Union's *Motion to exclude testimony and references to Smith's loss of income* [178] is GRANTED;

(e) Union's *Motion to exclude testimony and reference to Smith's familial loans, refinancing, or similar expenses* [180] is DENIED;

(f) Union's *Motion to exclude testimony and references regarding the termination and personnel file of Jorge Vallejo* [182] is GRANTED;

(g) Union's *Motion to exclude certain testimony of Deborah Moore [184]* is DENIED;

(h) Union's *Motion to prevent argument that assertion of privilege equates admission of liability, fault, or other similar contention* [186] is GRANTED.

SO ORDERED, this the 13th day of June, 2017.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**